Ronald DAVIDSON, Plaintiff–Appellant,

v.

Dean RILEY, Deputy Superintendent, Green Haven Correctional Facility, Ed Boulinger, Charles Scully, Superintendent, Thomas A. Coughlin, III, Commissioner, NYS Docs, Eugene S. LeFevre, Superintendent of Clinton Correctional Facility, D. McGuire, Deputy Superintendent, Deputy Superintendent Curran, R.V. Cox, Correspondence Department Employee, Harold J. Smith, Superintendent of Attica Correctional Facility, William McNulty, Deputy Superintendent, James E. Cochrane, Deputy Superintendent Correspondence Department Personnel 1–3 of Attica Correctional Department & Package Room, Defendants–Appellees.

No. 439, Docket 93–2603.

United States Court of Appeals, Second Circuit.

Submitted Nov. 7, 1994.

Decided Jan. 11, 1995.

Ronald Davidson, pro se.

G. Oliver Koppell, Atty. Gen., Albany, NY (Peter H. Schiff, Deputy Sol. General, Peter G. Crary, Martin A. Hotvet, Asst. Attys.

Gen., Albany, NY, of counsel), for defendants-appellees.

Before: FEINBERG, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

█ Plaintiff *pro se* Ronald Davidson, a New York State ("State") prisoner, appeals from a final judgment entered in the United States District Court for the Northern District of New York following a six-day jury trial before Thomas J. McAvoy, *Chief Judge,* dismissing his suit under 42 U.S.C. § 1983 (1988) against defendants officials of the New York State Department of Correctional Services ("DOCS") for interference with his right of access to the courts. The district court granted judgment as a matter of law in favor of certain defendants, and the jury returned a verdict in favor of the remaining defendants. On appeal, Davidson, who has proceeded *pro se* throughout, contends principally that he was denied a fair trial because he was forced to try his case while restrained by handcuffs and leg-irons. He also contends that the court made errors in discovery and evidentiary rulings. We affirm so much of the judgment as dismissed Davidson's claims against certain defendants as a matter of law; for the reasons stated below, however, we conclude that the court's order that Davidson be physically restrained rested on an impermissible foundation, and we remand for further proceedings with respect to the remaining defendants.

## I. BACKGROUND

Davidson commenced the present action in 1984 in the United States District Court for the Southern District of New York, alleging that various DOCS officials had violated his right of access to the courts by reading, outside of his presence, mail addressed to him that was of a legal nature and was clearly marked as such. In 1988, Judge Miriam Goldman Cedarbaum transferred the action to the Northern District, in part for the convenience of the parties, and in part for security reasons. With respect to the concern for security, Judge Cedarbaum relied on a statement by Judge Edward Wein-

feld, in transferring another Southern District suit brought by Davidson, that Davidson had previously made attempts to escape. *See Davidson v. Boulanger,* No. 84 Civ. 6039 (S.D.N.Y. May 27, 1987) (Weinfeld, J.) ("plaintiff escaped while on a visit to a hospital, attempted to escape again while on trial in this Court in 1983, and was found to have secreted three hacksaw blades and $71.00 in his shoes during a trip to the Metropolitan Correctional Center in 1984").

A. *Trial in the Northern District*

In the Northern District, the present action came to trial in August 1993. Davidson was brought to the courthouse in leg-irons, handcuffs, and a waist chain and "black box" that prevented him from moving his arms. At a conference just prior to the start of the trial, Davidson requested that the restraints be removed for trial, in part because they "make it impossible for me to conduct my own trial[,] just to refer to [and] . . . . physically manipulate my own papers." (Transcript, August 3, 1993 ("Tr."), 3.) Davidson also complained that, although the jury would know from the nature of his claim that he was a prisoner, the jury would "draw further adverse inferences" from seeing him so severely restrained. (Tr. 11.) He also suggested that wearing handcuffs and leg-irons would make it difficult for him to comply with the court's jury-challenge procedure, which required him, in order to voice any objections as to prospective jurors, to approach the bench.

The district court refused to allow Davidson to proceed without physical restraints, stating that it was giving the officers guarding Davidson "carte blanche" and that it declined to "second-guess" them (Tr. 2). The court repeatedly deferred to the guards:

MR. DAVIDSON: . . . . I would respectfully request that I have these handcuffs taken off.

THE COURT: No, I'm not going to do that, because it's up to the people who are professionals and experts in that field. If they think you're a risk—

MR. DAVIDSON: There has never been a determination that I'm a risk, and there has been a determination by the Commissioner of Corrections that I'm not an escape risk, and the superintendent of Attica has written memos saying I am not an escape risk.

THE COURT: These officers in charge of you feel that you are.

MR. DAVIDSON: I would respectfully request a hearing on that matter before we go to the trial and before the jury has to see me like this.

. . . .

THE COURT: It's up to the officers who are with you. I'm not going to do anything different than they advise.

MR. DAVIDSON: Well, I respectfully request an evidentiary hearing to determine the need for manacles.

THE COURT: Denied.

. . . .

THE COURT: . . . . [Y]ou should be treated as those people in charge of you think you should be treated.

. . . .

MR. DAVIDSON: . . . . I've been in front of other courts and they don't have persons in handcuffs if they don't create a disturbance, if they don't create a problem.

THE COURT: Well, evidently the people who are with you here in charge of your custody feel that it would be a security risk to remove your handcuffs. Is that right?

CORRECTION OFFICER: That is correct, Your Honor.

(Tr. 10–13.) When the court inquired into the feasibility of removing some of Davidson's physical restraints, one of Davidson's guards disapproved, stating that Davidson had made a previous escape attempt; Davidson's attempt to correct that statement, or at least to have an evidentiary hearing on it, was unsuccessful:

CORRECTION OFFICER: . . . [M]y own personal opinion is I want him left like that, the reason being is [*sic*] the prior escape attempt.

MR. DAVIDSON: That's the whole thing, I don't have a prior escape attempt, that's cleared up. I've beat that in court.

. . . .

MR. DAVIDSON: This is Sergeant Valentino, he didn't say that on the record, but he just made mention of an escape attempt which I have been acquitted of in a court of law and which the Commissioner of Corrections has written a letter saying that I am no longer considered an escapee. I spent time in SHU for that. I had two courts throw that out, expunge that, so I'm not an escape risk. If he is going to say I'm an escape risk, that's patently false; I should be able to go through a hearing. (Tr. 21–22.)

The court ultimately allowed Davidson to have the black box and waist chain removed, but not the handcuffs or leg-irons. No evidentiary hearing was held on the DOCS guard's assertion that Davidson was an escape risk or on Davidson's contention that he had prevailed in court challenges to such assertions.

## B. *The Letters and Court Decisions to Which Davidson Referred*

Prior to the trial in the Northern District, Davidson had on two occasions successfully challenged in state-court proceedings the allegations that he had attempted to escape from custody; in both instances, in published opinions, Davidson's record was ordered expunged. In the first instance, Davidson had challenged a prison disciplinary board determination that he was guilty of attempted escape in violation of "inmate rules." *Davidson v. Smith,* 69 N.Y.2d 677, 678, 512 N.Y.S.2d 13, 14, 504 N.E.2d 380, 381 (1986). Though lower courts upheld the prison board's determination, the New York Court of Appeals reversed on the ground that the rules Davidson was alleged to have violated were not in effect at the time of the alleged violation. The court ordered the "institutional findings of guilt nullified, and the proceedings expunged from [Davidson's] record." *Id.*

Thereafter, Davidson successfully challenged an institutional determination that he had "violat[ed], *inter alia,* rule 108.10 of the Rules of Inmate Behavior (attempted escape)." *Davidson v. Coughlin,* 154 A.D.2d 806, 806, 546 N.Y.S.2d 247, 247 (3rd Dep't 1989). In this case, Davidson prevailed in the trial court, which ordered that "all references to 'the underlying charges and [the] alleged misconduct on which [they were] based' be expunged from petitioner's files." *Id.* (brackets in Appellate Division opinion). The institutional defendants challenged the scope of this expungement order, protesting that some of the documents were material to ongoing federal litigation instituted by Davidson. The Appellate Division affirmed, with a slight modification. The appellate court stated that it found "nothing improper in the language employed in Supreme Court's judgment. . . . [A]n order of expungement mandates that all references to the underlying charges be removed from the inmate's record." *Id.* at 806, 546 N.Y.S.2d at 248 (internal quotes omitted). The court stated that "allowing references to charges that have been dismissed and other mischievously equivocal information that might be unfairly construed to remain in prisoners' records leaves inmates in jeopardy of having these references unfairly used against them." *Id.* at 806–07, 546 N.Y.S.2d at 248.

The appellate court's modification was that documents of an evidentiary nature that would be required for defense in Davidson's pending litigation should be turned over to the State Attorney General's office; the court added, however, "the express proviso" that the documents could "only be utilized in a limited fashion for defensive purposes and never offensively," and that "the disputed evidentiary material should not be turned over to the Department of Correctional Services for any purpose." *Id.* at 807, 546 N.Y.S.2d at 248.

As to the institutional correspondence to which Davidson referred at the hearing in the district court, Davidson has attached to his reply brief on this appeal copies of certain documents, which we take as an offer of proof as to what he would have produced at an evidentiary hearing. These documents include (1) a letter dated November 24, 1989, to Davidson from DOCS Commissioner Thomas A. Coughlin III—a defendant in *Davidson v. Coughlin* as well as the present litigation—acknowledging the expungement order in *Davidson v. Coughlin* and stating that that order was being "process[ed]"; (2)

a memorandum dated March 18, 1992, to Davidson from Timothy J. Murray, Deputy Superintendent of Attica Correctional Facility, stating, in part, "it has been determined that you will no longer be considered an escape risk"; and (3) a letter dated March 24, 1992, to Davidson from Coughlin acknowledging Murray's memorandum to Davidson that Davidson "will no longer be considered an escape risk," and stating, "[h]opefully, this will resolve this issue."

## C. The Trial

The district court apparently did not see either the published opinions or any of the institutional letters sent to Davidson. The trial proceeded with Davidson in handcuffs and leg-irons.

At the close of Davidson's case, the trial court dismissed his claims against defendants LeFevre, McGuire, Cox, McNulty, and Department Personnel 1–3 as a matter of law pursuant to Fed.R.Civ.P. 50. The jury eventually returned verdicts in favor of all of the remaining defendants.

## II. DISCUSSION

Davidson has appealed, contending principally that forcing him to try his case in handcuffs and leg-irons denied him a fair trial. He also challenges certain of the district court's evidentiary and discovery rulings, but he has not otherwise challenged the district court's entry of judgment as a matter of law in favor of LeFevre, McGuire, Cox, McNulty, and Department Personnel 1–3. We conclude that Davidson's evidentiary and discovery contentions are without merit and do not warrant discussion. Accordingly, so much of the judgment as dismissed the claims against those defendants is affirmed. As to the remaining defendants, however, we conclude that the judgment should be vacated, for the matter of what restraints could permissibly be imposed on Davidson was not properly dealt with in the district court.

## A. The Imposition of Physical Restraints

■ In civil as well as criminal cases, the right to a fair trial is fundamental. See, e.g., In re International Business Machines

Corp., 618 F.2d 923, 932 n. 11 (2d Cir.1980); Bailey v. Systems Innovation, Inc., 852 F.2d 93, 98 (3rd Cir.1988) ("[F]airness in a jury trial, whether criminal or civil in nature, is a vital constitutional right."); Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 248 (7th Cir.1975) ("the right to a fair trial [is] guaranteed by the Sixth Amendment to criminal defendants and to all persons by the Due Process Clause of the Fourteenth Amendment"), cert. denied, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). In either type of case, the court must be alert to avoid practices that may undermine the fairness of the factfinding process. Forcing a party to appear at a jury trial in manacles and other shackles may well deprive him of due process unless the restraints are necessary.

In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court, in considering what devices a trial court could properly have used to control an obstreperous and abusive defendant in a criminal case in order to avoid the need to remove him from the courtroom, noted that placing the defendant in physical restraints should be avoided except as a last resort, lest the defendant be denied a fair trial:

> no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

Id. at 344, 90 S.Ct. at 1061. Circuit courts have recognized that the concerns expressed in Allen are applicable to parties in civil suits as well. See, e.g., Lemons v. Skidmore, 985 F.2d 354, 356–59 (7th Cir.1993); Holloway v. Alexander, 957 F.2d 529, 530 (8th Cir.1992); Tyars v. Finner, 709 F.2d 1274, 1285 (9th Cir.1983); see also Woods v. Thieret, 5 F.3d 244, 246–47 (7th Cir.1993) (plaintiff's inmate witnesses required to appear in shackles and handcuffs). The principles consistently applied are that the trial court has discretion to order physical restraints on a party or witness when the court has found those restraints to be necessary to maintain safety or

security; but the court must impose no greater restraints than are necessary, and it must take steps to minimize the prejudice resulting from the presence of the restraints. The proceedings at issue in *Lemons v. Skidmore* ("*Lemons* ") and *Woods v. Thieret* provide contrasting illumination.

In *Lemons*, the prisoner plaintiff claimed that the defendant prison guards had beaten him in violation of his Eighth Amendment rights; the defendants contended that the plaintiff had attacked them first. For trial, Lemons was brought to the courthouse in handcuffs and leg-irons, and his attorney asked the magistrate judge who was to preside at trial to allow Lemons not to wear those restraints at trial. The magistrate judge denied the request, deferring completely to those guarding Lemons:

> Well, the position I take is since Mr. Lemons is in the custody of the Department of Corrections, they set the rules for how he will be restrained, if at all....

> Predictably, someone from the Department of Corrections stated that it was their policy to keep the restraints in place. Magistrate Judge Kauffman replied, "Okay, you are in charge."

*Lemons*, 985 F.2d at 356 (quoting magistrate judge). On appeal from a judgment in favor of the defendants, the court of appeals reversed and remanded for a new trial, concluding that

> [t]he magistrate judge abused his discretion by relying on the self-serving opinion of fellow penal officers of the defendants and not holding a hearing to determine what, if any, restraints were necessary, taking no steps to minimize the prejudice to Mr. Lemons in having him appear to be a violent and dangerous person who required leg irons and handcuff restraints, and in failing to give a curative instruction or take any other ameliorative steps.

985 F.2d at 356. The *Lemons* court noted that

> [t]he preferred procedure is for the trial judge to hold a brief hearing before trial at which the state may try to prove that restraints are necessary....

There was no such hearing held in this case. In fact, the magistrate judge did not give any individual consideration to this issue. He stated that since Lemons was in custody, he would leave the decision entirely in the hands of the Department of Corrections. The judge may not delegate his discretion to another party. While he could have consulted the Department of Corrections employees or court security officers, and listened to their opinions and the reasons in support of them, he had to consider all the evidence and ultimately make the decision himself.... Instead he delegated the decision to the Department of Corrections employees. To nobody's surprise, they said he should keep Lemons in handcuffs and leg irons. That delegation was particularly dangerous here where all of the defendants were also Department of Corrections employees, so that the decisionmaker could hardly be called impartial. When the trial judge delegates a decision, and gives no reason for the decision, that is not an exercise of discretion but an absence of and an abuse of discretion.

*Lemons*, 985 F.2d at 358. The trial court having failed to follow these steps, the court of appeals remanded for (a) a hearing on the necessary level of restraints, if any, and (b) a new trial. *See also Tyars v. Finner*, 709 F.2d at 1276, 1285 (in jury trial to determine whether a mentally retarded person was a danger to himself or others and thus, under California law, could be involuntarily committed to a state hospital, the imposition on him of physical restraints with no prior showing of demonstrable or articulable necessity, and no showing that less restrictive and less prejudicial means were unavailable, violated due process); *id.* at 1284 ("Shackling [or] restraining ... a [party] ... must be limited to cases urgently demanding that action, based upon a balancing of the [party's] rights to be present and to have an impartial jury with the need for orderly administration of justice.").

In contrast to the circumstances in *Lemons*, if the trial court has in fact evaluated the safety and security concerns, has taken steps to minimize the restraints and their prejudicial effects, and has given a caution-

ary instruction to the jury, there is likely no denial of due process. In *Woods v. Thieret*, 5 F.3d at 244–49, the trial court required the plaintiff's prisoner-witnesses to appear in leg and arm restraints, but there had been no delegation of the judicial responsibility to determine the need for those restraints. The court found that these witnesses, convicted of rape, aggravated assault, numerous armed robberies, and two murders, were dangerous. Further, the trial court noted that, due to the narrow configuration of the courtroom, the witnesses would be close to the bench, the counsel tables, and the jurors. Accordingly, the court determined that the prisoner-witnesses should be kept in leg and arm restraints. In order to minimize the prejudicial effect of the restraints, however, the court had the jury removed from the courtroom while the prisoner-witnesses were escorted to and from the witness stand. The court also instructed the jury to disregard the restraints when evaluating the witnesses' testimony. The court of appeals concluded that there was no due process violation.

In *Holloway v. Alexander*, a suit complaining of the living conditions in the punitive isolation area of a maximum security prison, both Holloway and his prisoner-witnesses had been required to appear at trial in shackles. The court of appeals found that Holloway had not been denied a fair trial in light of the facts that (a) the jury knew from the nature of the claim that Holloway and his witnesses were confined to a maximum security prison, (b) Holloway's own testimony about his criminal history and sentences made it clear that he was a dangerous felon and a likely flight risk, (c) the fact that these inmates were security risks inside the courtroom was not pertinent to the claim at issue, which centered on prison living conditions, and (d) the trial court instructed the jury that it was to disregard the shackles when it deliberated on Holloway's claim. 957 F.2d at 530. While concluding that Holloway had not been deprived of a fair trial, the court of appeals nonetheless cautioned that in general such physical restraints should be avoided unless necessary and that if it is not feasible to avoid some restraints, the trial court should use no greater restraint than necessary and must give cautionary instructions to minimize their prejudicial effect:

> Although we hold the use of shackles did not rise to the level of reversible error in Holloway's case, we do not hold the use of shackles could never amount to reversible error in a prisoner civil rights action. This court does not endorse a general policy of parading inmate civil plaintiffs or their witnesses before the jury in shackles. In these cases, the district court has a responsibility to ensure reasonable efforts are made to permit the inmate and the inmate's witnesses to appear without shackles during proceedings before the jury. When this is not feasible, the district court should take appropriate action to minimize the use of shackles, to cover shackles from the jury's view, and to mitigate any potential prejudice through cautionary instructions.

*Id.*

 When the trial court has followed the proper procedures, its decision is reviewable for abuse of discretion. If the court has deferred entirely to those guarding the prisoner, however, it has failed to exercise its discretion. *See, e.g., Lemons*, 985 F.2d at 358. If the reviewing court finds that the court has impermissibly delegated the decision to others or has otherwise abused its discretion, the error will not automatically lead to reversal, for harmless-error analysis applies. *See, e.g., id.* at 359; *Tyars v. Finner*, 709 F.2d at 1286 (remanding to district court to "determine whether prejudice resulted" to habeas petitioner by being forced to appear with restraints at civil-commitment trial); *cf. Estelle v. Williams*, 425 U.S. 501, 506–07, 96 S.Ct. 1691, 1694, 48 L.Ed.2d 126 (1976) (citing with apparent approval the rule, followed in the courts of appeals, that requiring a defendant to appear at a criminal trial in prison clothing is subject to harmless-error analysis). In determining whether an unnecessary imposition of restraints was harmless, the reviewing court should weigh several factors, including the strength of the case in favor of the prevailing party and what effect the restraints might have had given the nature of the issues and evidence involved in the trial. Where the restraints

would appear to be pertinent to the substance of the plaintiff's claims, the error may well not be harmless. For example, in *Lemons,* the court found the use of restraints was not harmless error because the defense was that Lemons had initiated the use of force, and thus, "plaintiff's tendency towards violence was at issue in this case." 985 F.2d at 357. In *Woods v. Thieret,* on the other hand, the court noted that if there was error it was harmless since the complaint centered on living conditions in the prison, an issue on which the presence of physical restraints had no evident bearing. *See* 5 F.3d at 249.

In the present case, which is quite similar to *Lemons,* we see several flaws in the district court's treatment of Davidson. First, it is plain that the court abdicated its responsibility to determine the need for the physical restraints, leaving the decision to the DOCS guards accompanying Davidson to the courthouse. The court's response to Davidson's request was typified by its statement that "it's up to the officer here, if they want to remove them, they can." (Tr. 9; *see also id.* at 11 ("It's up to the officers who are with you. I'm not going to do anything different than they advise."); *id.* at 12 ("you should be treated as those people in charge of you think you should be treated"); and *id.* at 2, 10, 13, 21.) This was an impermissible delegation of the court's responsibility to determine whether Davidson's due process right not to appear before the jury in shackles and manacles was outweighed by considerations of security.

Second, despite colloquy that strongly indicated the need for an evidentiary hearing as to whether Davidson was an escape risk, the court refused to conduct such a hearing. The court assumed from the fact that Davidson was brought to the courthouse under severe restraint that the guards believed he was a security risk. The court expressed that assumption to one of Davidson's guards and elicited the response, "That is correct, Your Honor." (*Id.* at 13.) The only explanatory statement on the record (and DOCS indicates that there were no *ex parte* statements (DOCS brief on appeal at 7)) was the DOCS officer's statement that he preferred to have Davidson fully restrained because of

"the prior escape attempt." (*Id.* at 21.) The court did nothing to probe that terse reference, and it ignored Davidson's more detailed assertions that he had evidence to the contrary, to wit "memos" from "the superintendent of Attica" (*id.* at 10) and "a letter" from "the Commissioner of Corrections" (*id.* at 22), that he was "not an escape risk" (*id.* at 10).

Defendants' attempt to defend the district court's decision to keep Davidson in handcuffs and leg-irons as a "reasonabl[e] conclu[sion] that shackling was necessary" (DOCS brief on appeal at 5), is unsupportable. Defendants argue that "[u]ndeniably, plaintiff represented a substantial escape risk. His history of escape and attempted escapes, including one during one of his § 1983 trials, demonstrates that unequivocally" (*id.*); that at the pretrial hearing, "Sergeant Valentino stated the need for the restraints on the record and the established facts prove he is an escape risk" (*id.* at 7–8); that "no hearing was necessary under the circumstances of this case.... [T]his case is unique in that the relevant facts establishing that he poses a substantial escape risk were found by Judge Weinfeld in *Davidson v. Boulanger* ..." (DOCS brief on appeal at 7); and that Davidson's state-court victories in *Davidson v. Smith,* 69 N.Y.2d 677, 512 N.Y.S.2d 13, 504 N.E.2d 380 and *Davidson v. Coughlin,* 154 A.D.2d 806, 546 N.Y.S.2d 247, "did not disprove the facts" (DOCS brief on appeal at 7). Far from persuading us that the district court's decision should be upheld, these arguments bring us to a third reason why it cannot be upheld. Though the DOCS brief cites the two cases in which Davidson prevailed, it is entirely silent as to the extent of his victory: it never mentions that in both cases, the courts ordered the escape matters expunged from Davidson's records. Nor does it mention that the second decision forbade DOCS to use the information expunged from those records except for defensive purposes. The Appellate Division's concern that Davidson would be "in jeopardy of having these references unfairly used against [him]," 154 A.D.2d at 807, 546 N.Y.S.2d at 248, appears to have been prescient.

Finally, we see no indication that the district court made any substantial effort to see that the prejudicial effect of any necessary restraints was minimized. Though we have no complete transcript of the proceedings below (having denied Davidson's request that one be provided at government expense), defendants apparently have provided such transcripts as they consider helpful to them. Defendants have not indicated that the court gave any cautionary instruction to the jurors to disregard Davidson's restraints as they considered the merits of his claim. The court's minimization effort appears to have been limited to deciding that the "black box" and waist chain should be removed. The court refused to consider removal of Davidson's handcuffs even though as a *pro se* litigant he would be conspicuously hampered in the handling of his papers. Further, the court apparently declined to modify its usual voir dire procedure though that procedure forced Davidson to hobble in leg-irons from counsel table to the bench after each round of questioning before he could make any objection to any prospective juror:

> THE COURT: .... If you have challenge [*sic*] for cause, challenges for cause are made by approaching the bench out of the hearing of the jury and tell me on the record why you wish to challenge a juror for cause.
>
> MR. DAVIDSON: Now, I have to get from my plaintiff's table, I have to get up and walk to the bench?
>
> THE COURT: Yes.
>
> MR. DAVIDSON: In handcuffs and shackles?
>
> THE COURT: Yes.

(Tr. 18.)

■ In sum, we conclude that the court inappropriately delegated the decisionmaking to DOCS guards, failed to conduct an evidentiary hearing, accepted as a basis for restraint an allegation that likely has been expunged from the record and to which state-court decisions appear to have prohibited all DOCS reference, and made no effort to mitigate the prejudice inherent in having a party appear in handcuffs and leg-irons before the jury. Further, we cannot conclude that these errors were harmless. While it does not appear that Davidson's claim in this action bore a relationship to either a propensity toward violence or a risk of escape, the potential for prejudice nonetheless seems to have been significant, for the verdict apparently was to turn on whether the jury would believe Davidson and his prisoner-witnesses or the DOCS witnesses. It hardly appears that the evidence in favor of the defendants could have been overwhelming, for defendants themselves characterize the case as a "swearing contest" in which the credibility of the witnesses was "crucial." (DOCS brief on appeal at 10.) Since it appears that the district court did not make appropriate efforts to minimize the prejudice inherent in forcing Davidson to appear in handcuffs and leg-irons, such as modifying some of its usual courtroom procedures and giving the jury a cautionary instruction, we conclude that Davidson is entitled to a new trial as to those defendants in whose favor the court did not grant judgment as a matter of law at the close of Davidson's case.

B. *Proceedings on Remand*

■ The matter of the degree, if any, to which Davidson should be restrained during a trial remains a question to be explored on remand. Though it is not clear from the state-court opinions that those decisions covered all of the matters mentioned in Judge Weinfeld's 1987 order, the institutional correspondence proffered by Davidson indicates that, as a result of the ordered expungement, he was no longer considered an escape risk as of March 1992. While it seems unlikely that the guard's opaque reference at the August 1993 conference to "the prior escape attempt" was to an event that postdated the 1992 correspondence, that possibility is not foreclosed.

The court should hold a hearing to determine what, if any, restraints on Davidson are necessary. In making that determination, the court may of course receive evidence from sources other than what has been expunged and other than what DOCS personnel have been judicially forbidden to assert. Following the court's determination, Davidson is to have a new trial of his claims against defendants other than LeFevre,

McGuire, Cox, McNulty, and Department Personnel 1–3, with the court taking steps to minimize the potentially prejudicial effect of any restraints that it concludes are necessary.

 Finally, we note that Davidson also contends that he was unduly prejudiced by the presence of 6–8 uniformed guards in the courtroom, who, over his objection, hovered at the witness stand whenever Davidson was questioning inmate witnesses. DOCS does not dispute this description but argues merely that "the presence of guards was warranted by plaintiff's escape history" and that, in any event, Davidson was not prejudiced by "[t]he conspicuous deployment of security personnel." (DOCS brief on appeal at 8.) The need for extra security guards should also be considered by the district court on remand. Our remand should not be read as suggesting that Davidson be allowed to proceed free of restraints and free of the appropriate deployment of security personnel in the courtroom.

## CONCLUSION

We have considered all of defendants' arguments on this appeal and, except as indicated above, have found them to be without merit. The judgment is affirmed insofar as it dismisses the claims against LeFevre, McGuire, Cox, McNulty, and Department Personnel 1–3. The judgment is vacated with respect to the remaining defendants, and the matter is remanded for further proceedings not inconsistent with this opinion.