UNITED STATES of America, Appellee,

v.

Eric ZUBER, Defendant–Appellant.

No. 939, Docket 96–1493.

United States Court of Appeals, Second Circuit.

Argued March 13, 1997.

Decided July 1, 1997.

Paul J. Van De Graaf, Assistant United States Attorney (Charles R. Tetzlaff, United States Attorney for the District of Vermont, David V. Kirby, Chief, Criminal Division, United States Attorney's Office, Burlington, VT), for Appellee.

E.M. Allen (Steeler & Allen, Burlington, VT), for Defendant–Appellant.

Before: CARDAMONE, JACOBS and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The defendant, Eric Zuber, appeals from a sentence imposed by the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge* ), following the defendant's plea of guilty to one count of cocaine distribution. The defendant urges that the court violated his due process rights by deferring to the recommendation of the United States Marshals Service that the defendant should appear at his sentencing hearing in arm and leg restraints without making an independent evaluation of the need to employ these restraints. The defendant also claims that the district court abused its discretion in denying his motion for a continuance of the sentencing hearing, where the Probation Office had raised new allegations potentially relevant to sentencing in a supplement to its Presentence Report ("PSR") made available to the court and the parties on the day before the hearing. Finally, Zuber contends that the district court relied on an erroneous statement of fact in calculating his sentence.

We hold that the rule that courts may not permit a party to a jury trial to appear in court in physical restraints without first conducting an independent evaluation of the need for these restraints does not apply in the context of a non-jury sentencing hearing. We likewise reject the defendant's contention that the district court erred in denying his motion to continue the sentencing hearing, where the court assured the defendant that it would not consider any material contained in the supplement to his PSR. Finally, we find no merit in the defendant's claim that the district court relied on an erroneous statement of fact in calculating his sentence.

I.

The defendant pled guilty to one count of cocaine distribution on February 26, 1996. On July 16, 1996, the day before Zuber's scheduled sentencing hearing, the Probation Office provided defense counsel (as well as the court and, presumably, the Government), with a supplement to the PSR. Because the supplement raised new allegations potentially relevant to Zuber's sentencing, defense counsel immediately moved to continue the hearing to allow for the preparation of a response to the new allegations. The court denied the motion but agreed not to consider any of the

allegations contained in the supplement in sentencing the defendant.

Zuber appeared before the district court for sentencing on July 17, 1996. Zuber appeared at the hearing in physical restraints. The decision to have him appear in restraints was made in the normal course by the U.S. Marshals Service. Defense counsel asked that some of these restraints be removed, stating that "[w]e can compromise at the chain on his feet, but this is not exactly a good way to present oneself to the sentencing Court." Chief Judge Murtha assured the defendant that the presence of the restraints would in no way prejudice the court's sentencing calculation.[1] Following the hearing, the court sentenced Zuber to imprisonment for 151 months.

The defendant appeals his sentence on the grounds that the district court erred (1) by deferring to the recommendation of the Marshals Service that the defendant be restrained during his sentencing hearing; (2) by denying the defendant's motion to continue the hearing; and (3) by relying on an erroneous statement of fact in arriving at the defendant's sentence. We address each claim in turn.

## II.

### A. *Physical Restraints*

We reject, as a matter of law, the contention that the district court erred in deferring to the recommendation of the Marshals Service on the need to restrain the defendant at his sentencing hearing, and we write briefly to distinguish this case from those in which we *have* required an independent, on the record, judicial evaluation of the need to employ physical restraints in court. Courts have recognized the danger to a criminal defendant, *see Illinois v. Allen*, 397 U.S.

337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), as well as to a party to civil litigation, *see, e.g., Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir.1993) (prisoner's 42 U.S.C. § 1983 action); *Tyars v. Finner*, 709 F.2d 1274, 1284–85 (9th Cir.1983) (habeas petitioner challenging involuntary commitment to state hospital), in being required to appear before a jury in physical restraints. In particular, "courts [have] found that the appearance of the [party] in shackles would prejudice the jury, causing them to believe that the person was dangerous." *Lemons*, 985 F.2d at 357. Accordingly, we have held that a presiding judge may not approve the use of physical restraints, in court, on a party to a jury trial unless the judge has first performed an independent evaluation—including an evidentiary hearing, where necessary—of the need to restrain the party. *See Davidson v. Riley*, 44 F.3d 1118, 1123–25 (2d Cir. 1995); *see also Hameed v. Mann*, 57 F.3d 217, 222 (2d Cir.1995). Where restraints are deemed necessary, the presiding judge must take steps to limit their prejudicial effect. *Davidson*, 44 F.3d at 1126. Although we need not decide the question here, some courts have held that these requirements apply with equal force in the context of jury *sentencing*—that is, where juries perform the task of imposing or recommending a particular sentence. *See, e.g., Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996); *Elledge v. Dugger*, 823 F.2d 1439, 1451–52 (11th Cir.), *modified*, 833 F.2d 250 (11th Cir.1987), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988).

The possibility that jurors will be prejudiced by the presence of physical restraints is not the sole rationale for placing strict limitations on their use in court,[2] but juror

---

1. Chief Judge Murtha stated: "There is no jury or any other person here who is going to ... be swayed. I am not swayed by the fact that he is or isn't in restraints. It's not going to affect the way I see his sentence."

2. As the Supreme Court observed in *Allen*, "[n]ot only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the

very dignity and decorum of judicial proceedings that the judge is seeking to uphold." 397 U.S. at 344, 90 S.Ct. at 1061; *see also Elledge*, 823 F.2d at 1451. "Moreover," the Court explained, a party's "ability to communicate with his counsel ... is greatly reduced when [he] is in a condition of total physical restraint." 397 U.S. at 344, 90 S.Ct. at 1061. We share Judge Cardamone's concern for these consequences of using physical restraints, but we disagree that it violates due process for a trial judge (in the absence of the

bias certainly constitutes the paramount concern in such cases. Indeed, courts will find harmless error where it is determined that the use of restraints was unlikely to have influenced members of the jury. *See, e.g., Hameed,* 57 F.3d at 223–24. Here, in contrast, it is the alleged prejudice in the mind of the *sentencing judge* that serves as the basis for the defendant's due process claim. *See* Brief for Defendant–Appellant at 10–11.

We decline to extend the rule that we set forth in *Davidson*—requiring an independent, judicial evaluation of the need to restrain a party in court—to the context of non-jury sentencing proceedings. Either directly or through courtroom deputies, law clerks or secretaries, district judges regularly consult with the Marshals Service regarding precautions to be taken at hearings involving persons who are in custody. The Marshals Service is, of course, charged with the movement of persons in custody in and around the courthouse, and responsible also for court security. *See* 28 U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security ... of the United States [Courts]."). Not surprisingly, in most such cases, a district judge will defer to the professional judgment of the Marshals Service regarding the precautions that seem appropriate or necessary in the circumstances. It has never been suggested—and it is not the rule—that every time a person in custody is brought into a courtroom in restraints, a hearing on the record with counsel is required, much less an evidentiary hearing and factfinding by the district judge.

We traditionally assume that judges, unlike juries, are not prejudiced by impermissible factors, *see, e.g., LiButti v. United States,*

107 F.3d 110, 124 (2d Cir.1997) ("[M]any of the management problems which a trial court invariably has to wrestle with in order to guard against unfair prejudice when one takes the proverbial Fifth simply do not exist in the context of a bench trial."); *Anderson v. Smith,* 751 F.2d 96, 106 (2d Cir.1984) ("[A] judge conducting a bench trial can hear evidence that he ultimately determines to be inadmissible without prejudice to his verdict."), and we make no exception here. We presume that where, as here, the court defers without further inquiry to the recommendation of the Marshals Service that a defendant be restrained at sentencing, the court will not permit the presence of the restraints to affect its sentencing decision. *Cf. United States v. Graham,* 72 F.3d 352, 359 (3d Cir.1995) ("[N]othing in the record of [defendant's] sentencing hearing ... suggest[ed] that the district court relied on [statements from codefendant's sentencing hearing] in imposing [defendant's] sentence .... [and][w]e are confident that experienced district judges are able to avoid the influence of inappropriate, irrelevant, or extraneous information."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1286, 134 L.Ed.2d 230 (1996).

### B. *Motion to Continue*

▮▮▮ Nor do we find error in the district court's decision to deny the defendant's motion to continue the sentencing hearing, notwithstanding the fact that the Probation Office provided the defendant with a supplement to its PSR on the day before the sentencing hearing, in violation of the timing requirements set forth in FED. R.CRIM. P. 32(b)(6)(C).[3] "Absent a showing both that

jury) to defer to the judgment of the U.S. Marshals Service without comment or extended colloquy on the issue. This conclusion is especially compelling, where, as here, no prejudice to the defendant will result. We note, too, that despite our common concern for the dignity of the courtroom, it would be impossible to avoid some appearances by defendants in physical restraints since the Marshals Service is responsible in the first instance for deciding how defendants are to be brought into the courtroom. Of course, a hearing on the issue might be held before the defendant ever entered the courtroom, but presumably a defendant would want to be present at

such a hearing, and the judge's ability to observe the defendant's demeanor might be important to his decision. In any event, in the instant case the district judge's comments on the matter, *see supra* note 1, indicate that he was mindful of the circumstances presented and of the concerns articulated by the defendant's counsel—concerns he effectively found to be without merit.

3. FED. R.CRIM P. 32(b)(6)(C) provides, in pertinent part, that:
   Not later than 7 days before the sentencing hearing, the probation officer must submit the presentence report to the court.... At the

the denial was arbitrary and that it substantially impaired the defendant's opportunity to secure a fair sentence, we will not vacate a sentence because a continuance was denied." *United States v. Prescott,* 920 F.2d 139, 146–47 (2d Cir.1990). We find here neither arbitrariness nor a substantial impairment of Zuber's opportunity for a fair sentence in the denial of his motion for a continuance. Chief Judge Murtha assured the defendant that he would not consider any of the allegations raised in the supplementary memorandum, *cf.* FED. R.CRIM. R. 32(c)(1) (providing that, at sentencing hearing, "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing"); *United States v. Taylor,* 72 F.3d 533, 550 (7th Cir.1995) (finding no basis for disturbing sentence because of late-filed amendment to PSR where, *inter alia,* district court gave assurance that it would not consider amendment), and we fail to see, as the defendant urges, that the judge's decision to keep Zuber restrained during the hearing evinces a violation of that assurance.

## C. *Alleged Misstatement of Fact*

■ Finally, we find no basis for disturbing the defendant's sentence in the fact that the court, in explaining its decisions both to increase the defendant's offense level for obstruction of justice and to deny the defendant's motion for an acceptance of responsibility departure, noted that the defendant had "fle[d] the jurisdiction twice." That the defendant fled from Vermont just prior to trial is not contested. The defendant argues only that the court erred in counting an earlier move from Vermont to Arizona—during the lengthy period following the defendant's arrest but prior to his indictment—as an act of flight. While a defendant may not be sentenced on the basis of information that is "materially untrue," *Prescott,* 920 F.2d at 143 (internal quotation marks omitted), on this record, we find nothing "materially untrue" in the district court's characterization of the defendant's pre-indictment move to Arizona as an instance of flight, particularly in light of the fact that, as the defendant concedes, he promptly and for a time assumed an alias upon his arrival there.

## III.

We have reviewed all of the defendant's claims and find them to be without merit. Accordingly, we affirm the sentence imposed by the district court.

CARDAMONE, Circuit Judge,
Concurring:

I agree with my colleagues that any error in this case was harmless, that is to say, had the trial court made the inquiry I believe it should have made, the information derived would have justified it, in the exercise of its discretion, to have the defendant produced in manacles. Hence, I vote, as the majority does, to affirm.

My reason for writing separately is my strong conviction that before a defendant is subjected to the humiliating prospect of pleading his case in chains, a trial judge must make an inquiry regarding the necessity for the restraints—even if no jury is present. In my view, the trial court's responsibility to satisfy itself by means of such inquiry may not be delegated to the federal marshals or other custodial personnel; a trial court may not hand over to others this duty which, like any other facet of running its courtroom, is imposed on it.

The majority apparently believes that so long as no jury is present, a defendant may, without any judicial inquiry as to its necessity, be led into the courtroom chained and shackled. Concededly, the distinction between a jury and non-jury setting is relevant to the issue of prejudice to a defendant. But, the rule that a defendant should not needlessly be shackled or suffer similar physical restraint during the course of the legal proceedings against him is, as the majority itself acknowledges, bottomed on more than the danger of jury prejudice. Physical re-

same time, the probation officer must furnish the revisions of the presentence report and the

addendum to the defendant, the defendant's counsel, and the attorney for the Government.

straints detract from the dignity and decorum of court proceedings, and on that basis alone are disfavored. *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). Restraints may also substantially interfere with the accused's ability to present his case—by impeding easy communication with counsel, confusing a defendant to a degree sufficient to impair his mental faculties, and causing the prisoner to suffer pain. *See Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir.1995). These concerns are implicated regardless of whether a jury is witness to the physical restraints placed on a defendant.

In sum, the broad language the majority uses does not square with the Supreme Court's admonition in *Allen* that such restraints should be used only as a "last resort." 397 U.S. at 344, 90 S.Ct. at 1061. The fact that the proceeding is non-jury does not diminish the degradation a prisoner suffers when needlessly paraded about a courtroom, like a dancing bear on a lead, wearing belly chains and manacles.

Our rule that a court impose no greater restraints than necessary, *Davidson v. Riley*, 44 F.3d 1118, 1122–24 (2d Cir.1995), presupposes the exercise by the trial judge of informed discretion as to their necessity in the first place. Here the trial court totally abdicated that responsibility. The defendant was brought into the courtroom in chains, and the court—rather than inquiring into their necessity—stated that it declined to get involved; instead the decision as to how defendant was to appear was made by his jailors. Because I think the majority opinion creates an unwise and unwarranted exception to the *Davidson* rule, I write separately.