**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JESSE LEE HOWARD,
        *Defendant-Appellant.*

No. 03-50524

D.C. No.
CR-03-00390-GAF

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOSE LUIS FARIAS-BLANCO,
        *Defendant-Appellant.*

No. 03-50525

D.C. No.
03-0861M-ABC

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOSE ANGEL CEDILLOS,
        *Defendant-Appellant.*

No. 03-50526

D.C. No.
03-0890M-ABC

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ROBERT HERMAN BOULIES,
        *Defendant-Appellant.*

No. 03-50527

D.C. No.
03-0945M-ABC

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DANIEL RIVERA-GONZALEZ,
*Defendant-Appellant.*

No. 03-50532

D.C. No.
CR-03-00435-
RSWL

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JORGE PINEDA-FERNANDEZ, a/k/a
Jorge Peneda,
*Defendant-Appellant.*

No. 03-50533

D.C. No.
CR-03-00439-GHK

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RANDOLPH ARTHUR CISNEROS,
*Defendant-Appellant.*

No. 03-50534

D.C. No.
CR-03-00486-
RSWL

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CORNELIO GARCIA-CHAVEZ,
*Defendant-Appellant.*

No. 03-50535

D.C. No.
CR-03-00493-NMM

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

JOSE CABANILLAS-NUNEZ, a/k/a Jose
Arsenio Cabanillas, Jose Arencio
Nunez,
   *Defendant-Appellant.*

No. 03-50536
D.C. No.
CR-03-00509-DMT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

RAYMOND FLORES,
   *Defendant-Appellant.*

No. 03-50537
D.C. No.
CR-03-00516-R-02

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

CHRISTIAN RAUDALES,
   *Defendant-Appellant.*

No. 03-50538
D.C. No.
CR-03-00533-FMC-
02

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

MIGUEL LENCIA,
   *Defendant-Appellant.*

No. 03-50539
D.C. No.
03-0858M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.

RAYMOND CAZARES,
          *Defendant-Appellant.*

No. 03-50540
D.C. No.
03-089M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.

VERNON CROCKER,
          *Defendant-Appellant.*

No. 03-50541
D.C. No.
03-0899M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.

LORENA GALLARDO,
          *Defendant-Appellant.*

No. 03-50542
D.C. No.
03-0944M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.

JEFFREY DARRYL WAFER,
          *Defendant-Appellant.*

No. 03-50543
D.C. No.
03-0860M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

PEDRO F. SANDOVAL-SANDOVAL,
          *Defendant-Appellant.*

No. 03-50544
D.C. No.
03-0896M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

CARLOS ALVAREZ,
          *Defendant-Appellant.*

No. 03-50545
D.C. No.
03-0942M-ABC
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
November 1, 2004—Pasadena, California

Filed March 27, 2007

Before: Mary M. Schroeder, Chief Judge, Ronald M. Gould
and Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Schroeder

**COUNSEL**

Carlton Frederick Gunn, Deputy Public Defender, Los Angeles, California, for the defendants-appellants.

Patrick R. Fitzgerald and Becky S. Walker, Assistant United States Attorneys, Los Angeles, California for the plaintiff-appellee.

**OPINION**

SCHROEDER, Chief Judge:

This is an interlocutory appeal by criminal defendants challenging a requirement that pretrial detainees making their first appearance before a magistrate judge wear leg shackles. The district-wide shackling policy was implemented by the United States Marshals Service for the Central District of California after consultation with the magistrate judges. In each of these seventeen cases, a magistrate judge denied the Federal Public Defender's motion for the defendant to appear without shackles at the initial appearance. The district court reviewed these

adverse magistrate judges' rulings in a consolidated appeal. The district court, citing safety concerns, affirmed the magistrate judges' shackling decisions. The record contains evidence that the policy was adopted after consultation between magistrate judges and the United States Marshals Service, and that the policy was implemented to address the security concerns associated with multi-defendant proceedings in an unsecured, large courtroom, in a district in which the security personnel must cover several courthouses.

Before reaching the merits of the case, we must deal with appellate jurisdictional obstacles raised by the government. These are questions of mootness and appellate jurisdiction over interlocutory orders. We conclude that the case is not moot because the issues are capable of repetition and will otherwise evade review, and that we have appellate jurisdiction to review the orders that finally dispose of issues collateral to the merits of the cases.

On the merits, it is undisputed that the policy effectuates some diminution of the liberty of pretrial detainees and detracts to some extent from the dignity and the decorum of a critical stage of a criminal prosecution. We conclude, however, that the shackling policy was adopted with an adequate justification of its necessity. On the basis of the record before us, we affirm the district court's order upholding the policy.

## BACKGROUND

Defendants seek review of a district-wide policy requiring leg restraints during defendants' initial appearances. The policy was discussed by the magistrate judges in formal and informal meetings. The magistrate judges also consulted with the United States Marshals Service for the Central District of California, and, in April 2003, following these consultations, the Marshals Service implemented the policy. It applies only to in-custody defendants as opposed to defendants appearing in court in response to a summons. The record indicates that

the Marshals Service consulted with the magistrate judges before enacting the policy and that it was enacted to address security concerns surrounding the transportation of varying numbers of in-custody defendants from secure facilities to a less-secure courtroom. The record also indicates that during at least some period in the past, defendants were neither shackled nor handcuffed at initial appearances. Before the policy in question was implemented, however, in-custody defendants appeared in full restraints, so this policy represented a reduction of restraints on defendants.

The record contains the declaration of Robert Masaitis, Chief Deputy United States Marshal for the Central District of California, who states that "[t]he new policy was implemented after consultations with the magistrate judges of the district." He further states that the shackling policy is necessary to ensure safety and order in the courtroom. He also states that the need for leg restraints is enhanced by staffing shortages in the Marshals Service. The declaration also states that prisoner management is crucial to the Marshals Service's duty to provide security for the federal judiciary, and that the greatest risks of escape and violence occur during transportation from detention facilities and in the courtroom.

In each of these consolidated cases, the defendant was represented by the Federal Public Defender and made his initial court appearance with leg restraints. The Federal Public Defender moved that the defendant be permitted to appear without shackles. In some cases, the magistrate judges allowed the Federal Public Defender to argue the motion. The magistrate judge denied the motion in each case.

In a consolidated appeal from interlocutory orders, the Federal Public Defender sought district court review of the magistrate judges' denials of the motions. The district court affirmed the magistrate judges' shackling decisions. It noted that shackling may indeed detract from the dignity and decorum of judicial proceedings, but concluded that safety inter-

ests outweighed this concern. The district court clarified that any other potential problems with shackling could be addressed in an individual case, if necessary. Therefore, the district court held that the policy did not deprive the defendants of their due process rights. This consolidated appeal followed.

## MOOTNESS

**[1]** The government argues that this case is moot because no effective relief can be ordered at this stage for these defendants whose criminal pretrial proceedings are over. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). Article III, Section 2 of the Constitution limits federal court jurisdiction to "cases" and "controversies." This case or controversy requirement exists through all stages of federal judicial proceedings. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A number of doctrines have developed, however, to permit courts to review a case in which it is no longer possible to remedy the particular grievance giving rise to the litigation.

**[2]** One is the exception to the mootness doctrine for violations "capable of repetition, yet evading review." *See, e.g.*, *Gerstein v. Pugh,* 420 U.S. 103, 110 n.11 (1975). This is such a case. In *Gerstein,* the Supreme Court stated that very brief pretrial detention is by nature temporary, because it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is released or convicted. *Id.* There the Supreme Court held the exception to the mootness doctrine for violations "capable of repetition, yet evading review" applied because the constitutional violation was likely to be repeated but would not last long enough to be reviewed before becoming moot. *Id.*

**[3]** An initial proceeding in a criminal case is even more temporary than the pretrial detention at issue in *Gerstein*. This case evades review for essentially the same reason. The defendants could not have brought the challenges to the

shackling by the magistrate judge to the district court, much less to us, before the harm of shackling at the initial proceeding was completed.

[4] This situation giving rise to this challenge also is capable of repetition. We acknowledge that we cannot assume that criminal conduct will be recurring on the part of these defendants. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). This case is therefore distinguishable from an abortion case, the classic case capable of repetition yet evading review, because we can assume a woman can become pregnant again. *See generally Roe v. Wade*, 410 U.S. 113, 125 (1973). This makes no material difference, however, because a future charge assuredly will be brought against someone, and the shackling policy would similarly escape review.

For this reason, we have held that a case is capable of repetition when the defendants are challenging an ongoing government policy. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir. 2003). In *Oregon Advocacy Center*, the plaintiffs alleged that the state mental hospital, which was charged with evaluating and treating mentally incapacitated defendants, refused to accept the defendants on a timely basis. *Id.* at 1105-06. The plaintiffs challenged a state policy that results in the delays. *Id.* at 1118. We held that although the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing. *Id.* "The continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument." *Id.*

The D.C. Circuit similarly held that when a complaint challenges an acknowledged government policy, the government cannot prevail by arguing that the controversy became moot when the particular situation at issue resolved itself. *Ukrainian-American Bar Ass'n v. Baker*, 893 F.2d 1374, 1377 (D.C. Cir. 1990). The defendants in this case are challenging an ongoing government policy.

**[5]** As a practical matter, this case is materially similar to a class action in which the class representative's claims may become moot, but there are members of the class whose claims are not moot. The Supreme Court has held that under the capable of repetition, yet evading review doctrine, the termination of a class representative's claim does not moot the claims of other class members. *See Gerstein*, 420 U.S. at 110 n.11. This holding applies outside of the class action context when the circumstances of the case are analogous to those found in class action cases. *Oregon Advocacy Ctr.*, 322 F.3d at 1117; *see also Gerstein*, 420 U.S. at 111 n.11. The defendants in this case are seeking to represent interests broader than their own, and the attorney bringing the case is a Federal Public Defender with other clients with a live interest in the case. *See Gerstein*, 420 U.S. at 111 n.11; *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

**[6]** The government suggests that this kind of blanket challenge to a procedure used in prosecutions must be brought as a civil class action rather than within the relevant criminal proceedings in which it arose. Our case law does not establish that a civil forum is the exclusive forum. Indeed, it may be more appropriate to decide this case in the context of actual prosecutions rather than by resort to hypotheticals or generalizations. On a practical level, we must understand that this particular challenge could not be made in the civil context, because the only available attorney to represent these criminal defendants is the Federal Public Defender. The Federal Public Defender cannot pursue a civil class action on their behalf, because there is no provision for the appointment of a Federal Public Defender in a civil action, and the office of Federal Public Defender is barred from instituting any action on its own. *See* 18 U.S.C. § 3006A(a), Administrative Office of the U.S. Courts, *Guide to Judiciary Policies and Procedures*, Vol. VII, Ch. IV. This is still another reason why we should not hold that this challenge can proceed as only a civil action.

## APPELLATE JURISDICTION

**[7]** The government contends that we lack appellate jurisdiction because this is not an appeal from a final district court judgment, but from a ruling in consolidated interlocutory appeals. Courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. There is an exception to the final judgment rule for certain interlocutory orders, known as "collateral orders," where review of a final judgment would be unavailing. This exception applies when the order (1) will conclusively determine the disputed question, (2) will resolve an important issue completely separate from the merits, and (3) is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Adherence to the rule of finality has been particularly stringent in criminal prosecutions, because the delays and disruptions that come with interlocutory orders can hinder the effective and fair administration of the criminal law. *Abney v. United States*, 431 U.S. 651, 657 (1977).

**[8]** All of the requirements of the collateral order doctrine apply here. The shackling order conclusively determines the disputed question of whether the shackling policy is permissible. This question is wholly separate from the merits of the underlying action. Therefore, the question before this court is whether the order would be effectively unreviewable if the court delayed the defendants' appeals until they are either convicted and sentenced, or acquitted. *See United States v. Friedman*, 366 F.3d 975, 979 (9th Cir. 2004). The order must involve "an important right which would be 'lost, probably irreparably,' if review had to await final judgment." *Abney*, 431 U.S. at 658.

**[9]** Even assuming that defendants' claims could be reviewed on appeal from conviction, their claims could not be reviewed if they are acquitted. *See Sell v. United States*, 539 U.S. 166, 176-77 (2003); *Friedman*, 366 F.3d at 979. In most

cases, a defendant's rights would be sufficiently vindicated by an acquittal. *See, e.g., Flanagan v. United States*, 465 U.S. 259, 266 (1984) (acquittal would remedy harm of order disqualifying counsel); *United States v. MacDonald*, 435 U.S. 850, 859 (1978) (acquittal would remedy harm of speedy trial violation). This case, however, falls within a subset of cases in which acquittal does not undo the harm to the defendant. The Supreme Court has held, for example, that an order to deny bail and require pretrial detention cannot effectively be reviewed on appeal. *Stack v. Boyle*, 342 U.S. 1, 6 (1951). Similarly, we have held that involuntary commitment of a defendant is effectively unreviewable on appeal, because there would be no appellate review if the defendant was found not competent to stand trial or acquitted. *Friedman*, 366 F.3d at 979. We find this case to be analogous.

An acquittal in this case would favorably terminate the prosecution of the defendant, but would not affect the deprivation of liberty that occurred during the pretrial hearing. *See Sell*, 539 U.S. at 176-77; *Friedman*, 366 F.3d at 979.

**[10]** Therefore, defendants' claims are effectively unreviewable on appeal from a final judgment. The district court's order reviewing the magistrate judges' determinations is an appealable collateral order.

## MERITS

**[11]** This court has not decided whether a general policy of shackling a defendant for a proceeding in front of a judge violates due process. Nearly all of the litigation concerning shackled defendants arises in the context of proceedings in front of a jury. *See, e.g.*, *Deck v. Missouri*, 544 U.S. 622 (2005) (extending the general prohibition on the use of shackles to the penalty phase of a jury trial); *Duckett v. Godinez*, 67 F.3d 734 (9th Cir. 1995); *Jones v. Meyer*, 899 F.2d 883 (9th Cir. 1990); *Spain v. Rushen*, 883 F.2d 712 (9th Cir. 1989). These cases turn in large part on fear that the jury will

be prejudiced by seeing the defendant in shackles. *See Deck*, 544 U.S. at 630; *Duckett*, 67 F.3d at 748; *see also Illinois v. Allen*, 397 U.S. 337, 344 (1970). Thus, the general rule is that a court may not order a defendant to be physically restrained unless the court is " 'persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom,' " and " 'the court must pursue less restrictive alternatives before imposing physical restraints.' " *Gonzalez v. Pliler*, 341 F.3d 897, 900 (9th Cir. 2003) (quoting *Duckett*, 67 F.3d at 748). In the present case, however, fear of prejudice is not at issue, as a judge in a pretrial hearing presumably will not be prejudiced by seeing defendants in shackles. *See United States v. Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) ("We traditionally assume that judges, unlike juries, are not prejudiced by impermissible factors.").

[12] In *Deck*, the Supreme Court stated that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck*, 544 U.S. at 626. In discussing the "deep roots" of this rule, however, the Court noted that "the rule did not apply at 'the time of arraignment,' or like proceedings before the judge." *Id.* Presumably, the reason the rule did not apply during proceedings before the judge is that the primary concern, expressed throughout the Court's opinion, is the effect on the jury of viewing the defendant in shackles. *See, e.g.*, *id.* at 630 ("Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process."); *id.* at 631 (stating that one reason judges must seek to maintain a dignified judicial process is that the "courtroom's formal dignity . . . reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve"); *see also, e.g.*, *Gonzalez*, 341 F.3d at 899-900 (stating that "the sight of physical restraints may have a significant effect on the jury"); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("[S]hackling, like prison clothes, is an indica-

tion of the need to separate a defendant from the community at large, creating an inherent danger that the jury may form the impression that the defendant is dangerous or untrustworthy."). Because the primary concern is the effect of physical restraints on a jury, we have found no prejudice to a defendant where the restraint was not visible to the jury. *See, e.g.*, *United States v. Collins*, 109 F.3d 1413, 1418 (9th Cir. 1997) (rejecting the defendant's due process challenge to being chained to a table during his trial, reasoning that, "after weighing various alternatives, the [district] court adopted a means of restraint that was not visible to the jury," and concluding that he failed to demonstrate prejudice because there was no evidence that the jury was aware that he was restrained); *Castillo v. Stainer*, 983 F.2d 145, 149 (9th Cir. 1992) (finding that "the court's error in too quickly permitting shackling" was harmless because, "[a]s far as the jury was concerned, the chain was invisible"), *amended by* 997 F.2d 669 (9th Cir. 1993).

**[13]** Defendants contend that the shackling policy violates their due process rights. They point out that before a defendant can be shackled in front of a jury, the court must be persuaded by compelling circumstances that some measure is needed to maintain security, and that no less restrictive alternatives are available. *See Jones*, 899 F.2d at 884-85. They argue that due process requires that there be no restraint whatsoever without an individualized determination. This may go farther than due process requires. But we do not have to reach this question. This case does not involve the question of shackling in the presence of a jury or during a trial.

**[14]** The Second Circuit has concluded that the rules regarding shackling do not apply in proceedings before a judge, rather than a jury. *Zuber*, 118 F.3d at 102. In *Zuber*, the court held that "the rule that courts may not permit a party to a jury trial to appear in court in physical restraints without first conducting an independent evaluation of the need for these restraints does not apply in the context of a non-jury

sentencing hearing." *Id.* at 102; *see also DeLeon v. Strack*, 234 F.3d 84, 87-88 (2d Cir. 2000) (rejecting the argument that the state trial judge "improperly delegated the decision regarding whether or how to restrain him to a corrections official rather than independently evaluating the need for the restraint," and reasoning that, "even if the state judge did not exercise independent judgment, it is not clear that such an independent exercise of discretion is even required when restraints will not be visible to a jury") (citing *Zuber*, 118 F.3d at 103-04).

**[15]** The court distinguished the situation from proceedings in the presence of a jury, reasoning that the possibility of juror bias "constitutes the paramount concern" in cases requiring "an independent, on the record, judicial evaluation of the need to employ physical restraints in court." *Zuber*, 118 F.3d at 103-04. The court noted that the United States Marshals Service was responsible for court security and that district judges therefore consulted regularly with the Marshals Service and deferred to its judgment regarding "precautions to be taken at hearings involving persons who are in custody." *Id.* at 104. Finally, the court stated that, "[w]e presume that where, as here, the court defers without further inquiry to the recommendation of the Marshals Service that a defendant be restrained at sentencing, the court will not permit the presence of the restraints to affect its sentencing decision." *Id.*

Similarly here, the magistrate judges of the district court discussed the issue among themselves and consulted with the Marshals Service about the balance to be struck in proceedings where, as Magistrate Judge Charles F. Eick stated, "security-related information concerning defendants typically is incomplete." Judge Eick explained that the court made the "institutional decision" in favor of the shackling policy after several formal and informal meetings.

The security concerns addressed by this policy emerge due to the Central District's practice of conducting proceedings in

a large courtroom on the third floor of the Roybal Courthouse, in the presence of multiple defendants, where the risks of conflict, violence, or escape are heightened. The policy was instituted following consultation with the Marshals Service, which is charged with providing for the security of the United States courts. 28 U.S.C. § 566(a). *Cf. United States v. Mayes*, 158 F.3d 1215, 1226 (11th Cir. 1998) (stating that the district court was "entitled to rely in part upon the expertise and experience of the Marshals Service in making its decision" to impose physical restraints on the defendants).

The record indicates that this policy is less restrictive than the previous policy requiring full restraints. The policy leaves in place the option for a defendant to move the court for removal of the shackles, and an individualized determination may be made at the time of the motion as to whether extenuating circumstances warrant removal of the shackles. We further note that understaffed security officers must provide courtroom security in a large and unsecured space.

**[16]** The policy at issue concerns only proceedings conducted without the presence of a jury. It was adopted by the magistrate judges of the court following consultation with the Marshals Service to address legitimate security concerns in the Roybal Courthouse. For the foregoing reasons, the district court's judgment to uphold the policy is **AFFIRMED.**