**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JOHN B. BRANDAU,
            *Defendant-Appellant.*

No. 06-10512

D.C. No.
CR-06-00131-OWW

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

CHRISTINA ANN CARR,
            *Defendant-Appellant.*

No. 06-10717

D.C. No.
CR-06-00175-OWW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
April 15, 2009—San Francisco, California

Filed August 21, 2009

Before: Stephen Reinhardt, John T. Noonan and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Robert Warren Rainwater, Eugene, Oregon, for the defendants-appellants.

Stanley Albert Boone, United States Attorney, and Karen A. Escobar, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

**OPINION**

REINHARDT, Circuit Judge:

**[1]** A criminal defendant's first and sometimes only exposure to a court of law occurs at his initial appearance. The conditions of that appearance establish for him the foundation for his future relationship with the court system, and inform him of the kind of treatment he may anticipate, as well as the level of dignity and fairness that he may expect. We have recognized that shackling defendants at such time "effectuates some diminution of the liberty of pretrial detainees and detracts to some extent from the dignity and the decorum of a critical stage of a criminal prosecution." *United States v. Howard*, 480 F.3d 1005, 1008 (9th Cir. 2007). We have not, however, fully defined the parameters of a pretrial detainee's liberty interest in being free from shackles at his initial appearance, or the precise circumstances under which courts may legitimately infringe upon that interest in order to achieve other aims, such as courtroom safety.

This appeal challenges a mandatory full body shackling policy applicable to all defendants at initial appearances that was implemented by the district judges of the Eastern District of California. During the pendency of the appeal, the official policy was rescinded and rewritten. Whether the full shackling policy continues in practice is, however, unclear. Accordingly, we remand the case to a district judge outside the Eastern District of California to conduct an evidentiary hearing regarding the present shackling practice at initial appearances and to determine in the first instance whether this consolidated case is now moot.

## I. Factual and Procedural Background

### A.

John B. Brandau ("Brandau") was arrested in Yosemite National Park ("Yosemite") for disorderly conduct and public

intoxication. The next day he was brought before a United States magistrate judge in Yosemite. Brandau's federal public defender made a motion to unshackle him during his initial appearance. The magistrate judge denied the request, considering himself bound by the Eastern District of California's General Order No. 441, which required the full shackling of all defendants at first appearance. Brandau pled guilty to public intoxication in a national park, was sentenced to twelve months of non-reporting informal probation, two days' time served, a $250 fine, and attendance at AA meetings. He was released later that morning.

Brandau filed a timely appeal of the shackling order, arguing that General Order No. 441 should be rescinded, both on constitutional grounds and because the rule was promulgated without public notice and comment. His case was consolidated with two other appeals challenging the district-wide shackling policy, one of which involved Christina Ann Carr ("Carr").

**B.**

Carr was indicted and charged with four counts of submitting false claims to FEMA and four counts of mail fraud. She was informed by the FBI that, on account of her cooperativeness, she could appear on her own accord at the arraignment. She self-surrendered to the Marshal's office, at which point she was taken into custody, fully shackled, and brought to court. Carr's federal public defender requested that she be ordered unshackled for the first appearance, in light of the fact that she had just self-surrendered, but the magistrate judge denied the request without a hearing pursuant to General Order No. 441.

Carr pled not guilty and was ordered released on her own recognizance. She timely appealed the magistrate judge's shackling order, and her case was consolidated with Brandau's.

The government filed a superseding indictment and Carr pled guilty, pursuant to a plea agreement, to one count of making a false statement to a government agency. She agreed to waive her right to appeal "her plea, conviction and sentence." She was sentenced to a 36-month term of supervised probation and to pay a restitution amount of $1,812.

## C.

Prior to the arrests of Brandau and Carr, the district judges of the Eastern District of California ("the Eastern District") adopted General Order No. 441. The Order, drafted in consultation with the United States Marshal for the Eastern District, mandated that "[a]t initial appearances, *all* defendants will be *fully shackled*." (emphasis added). "Fully shackled" was defined to include "leg shackles, waist chains, and handcuffs." General Order No. 441 did not provide for any individualized determinations regarding the appropriateness of full body shackling.

On appeal from the magistrates' shackling orders in the consolidated cases, Judge Wanger of the Eastern District concluded that General Order No. 441 had not been promulgated with the appropriate public notice and comment rule-making procedure. He referred the General Order to all of the judges of the Eastern District for re-promulgation. The Eastern District judges issued General Order No. 449, adopting Local Rule Criminal 43-401, which set out a new shackling policy for initial appearances in the Sacramento and Fresno courthouses, and directing a period of public notice and comment. The judges then vacated that Order and adopted modified rules twice more.

The present rule, announced in the second modification, General Order No. 465, applies only to the Sacramento courthouse and requires that "*[u]nless the Court determines otherwise*, at the commencement of initial appearances, all *in custody* defendants shall be in *leg restraints* (including waist

chains)." (emphasis added). The rule is different from General Order No. 441 in certain key respects that were central to Brandau and Carr's initial challenge: the present rule allows for the possibility of individualized determinations, applies only to in-custody defendants, and establishes a general practice of leg and waist shackling but not of handcuffing. The new rule, however, does not apply to the courthouses in Fresno and Yosemite, where Carr and Brandau appeared. General Order No. 465 is accompanied by written findings, which note "the exclusion of the Fresno division from this policy" and explain that "each judge in that division is responsible for, and committed to the safety and decorum of the proceedings, and makes shackling decisions *on individual cases* in consultation with counsel, parties and the United States Marshal." The findings further explain that General Order No. 465 does not apply at all to the courthouse in Yosemite "because of the type of facilities at [that] location[ ], and because the security in [that] location[ ] is provided by federal agencies other than the Marshal Service and whose primary functions do not include courtroom security." There is no evidence in the record concerning the nature of the shackling policy or lack thereof in Yosemite.

Moreover, the government has provided us with no information at all regarding the practical effect of the new General Order, and whether or not the de facto policy in any or all of the three locations remains full shackling of all defendants at initial appearances. Notwithstanding this uncertainty, it is clear that, at the least, the letter of the law has changed significantly since the cases were appealed. Accordingly, we are faced with the question whether this appeal is now moot.

## II. Mootness

### A. "Capable of repetition, yet evading review"

**[2]** The first hurdle that Brandau and Carr ("the defendants") must overcome to show that their case is not moot

pertains to the unusual procedural posture of their challenge. The defendants' initial appearances are long past, and they challenge the facial legitimacy of a shackling policy that, accordingly, no longer affects them. In the ordinary case, "[w]here the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002).

**[3]** There is an exception to mootness, however, for situations that are "capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). Shackling at first appearances — even more than the pretrial detention at issue in *Gerstein* —

> is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will [be subjected to] allegedly unconstitutional procedures.

*Id*. Under these circumstances we have

> held that although the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing. "The continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument."

*Howard*, 480 F.3d at 1010 (alterations in original; citation omitted) (quoting *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir. 2003)). Accordingly, we held in *Howard* that the appeal, which like the present case concerned a

district-wide shackling policy at initial appearances, was not moot because the shackling policy was ongoing, even though each of the seventeen defendants who challenged that policy on interlocutory appeal were no longer in pretrial criminal proceedings.

In the present case, however, the policy being challenged is, at least on paper, no longer in place. Unlike in *Howard* and *Mink*, the government *does* contest the policy's continued existence. General Order No. 441 has been rescinded, and a new policy, adopted pursuant to General Order No. 465, has been implemented with respect to the Sacramento Courthouse. The associated findings state that judges shall make individual determinations regarding shackling in Fresno, and that the policy does not apply at all in Yosemite. Because the letter of the law has changed, it is not at all certain that "the policy is ongoing," *Howard*, 480 F.3d at 1010, or that appellants, or any others similarly situated, will be subjected to the "allegedly unconstitutional procedures," which are "capable of repetition, yet evading review," *Gerstein*, 420 U.S. at 111 n.11. Whether the *Gerstein* exception to mootness applies here is placed in doubt.

**[4]** Despite the fact that the law has changed, however, there is reason to think that the actual state of affairs has not. At oral argument, counsel for the defendants represented on the basis of personal experience that the Eastern District's shackling practice remains now as it was. Counsel for the government conceded, also on the basis of her own experience, that defendants in the Eastern District are still, in general, *fully* shackled (handcuffed and placed in waist and leg chains) at initial appearances and that she has not personally witnessed any individualized determinations regarding shackling. This anecdotal information strongly suggests that the full shackling policy is ongoing. As of now, and on the record before us on appeal, we do not have sufficient information to know whether that is the case, and whether, as a result, there

is an "ongoing policy" that renders the alleged violations "capable of repetition, yet evading review."

### B.   "Voluntary cessation"

**[5]** There is another mootness doctrine that affects our inquiry in this case: the "voluntary cessation" exception to mootness. Even if the shackling policy is no longer "ongoing," *Howard*, 480 F.3d at 1010, the case is not moot if that policy was abandoned voluntarily and might reasonably recur. *See Padilla v. Hanft*, 547 U.S. 1062 (2006) (Ginsburg, J., dissenting from denial of petition for certiorari) ("A party's voluntary cessation does not make a case less capable of repetition or less evasive of review.").

**[6]** It is well established that the "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S.167, 189 (2000) (quotation marks omitted). When a party abandons a challenged practice freely, the case will be moot only

> "if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur" . . . . The "*heavy burden* of persuading" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id.* (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)) (alterations omitted) (emphasis added). The voluntary cessation exception is not absolute:

> [E]ven when a cessation is voluntary, mootness can follow. Even then, the record may show that (1) it can be said with assurance that there is no reasonable

expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (quotation marks omitted); *see also White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (where the agency's change in position was shown to be "permanent," the action was moot).[1]

**[7]** On the record before us, it is by no means "absolutely clear" that the full shackling policy will not recur, or that *in practice*, the alleged violations ever ceased, let alone were "completely and irrevocably eradicated." *See, e.g.*, *McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 983 (9th Cir. 2002) (holding a case was not moot where, "[a]lthough the Secretary argues in her brief that she has now changed her policy . . . the plaintiffs have presented additional evidence suggesting that local offices have not followed the new policy"). Indeed, the rapid re-promulgation of the shackling policy on three separate occasions since these cases began suggests that the policy is not in its final iteration, and that any relief that the new policy has afforded is not "irrevocable."

**[8]** At the same time, it is possible that the change in policy was not fully voluntary and therefore does not fall under the "voluntary cessation" exception. *See Smith*, 233 F.3d at 1194-

---

[1]A *statutory* change is, as a rule, generally sufficient to moot a case. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). That narrow exception, however, likely does not apply to rules promulgated by the district courts. *See Chemical Producers and Distributors Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006) ("The cases we cited in [*Jacobus v. Alaska*, 338 F.3d 1095 (9th Cir. 2003)] for a near categorical rule of mootness are cases of statutory amendment. The examples we cited of continuing federal adjudicatory power are of local government or administrative agency repeal or amendment.").

95. The rescission of General Order No. 441 was instigated by court order, albeit procedural in nature and issued by a judge of the same court that adopted and then re-adopted the policy. The subsequent changes in the policy took place against the legal backdrop of *Howard.* By allowing for individualized determinations, limiting the policy's application to in-custody defendants, and requiring only leg shackles, the changes brought the present written policy for Sacramento into line with the Central District policy upheld in that case, *see* 480 F.3d 1005, although the same is not true for Fresno and Yosemite. The conformance of the Sacramento written policy to Ninth Circuit law suggests that the change was not entirely voluntary, and that a regression to the old policy is less likely to occur, at least in that part of the Eastern District.

[9] For these reasons, we are unable to determine at this juncture whether the "voluntary cessation" exception to mootness applies.

### III.    Conclusion

[10] In short, it is possible, although not certain, that in some or all of the district courts of the Eastern District of California there is an "ongoing" mandatory full shackling policy, and that the violations alleged are "capable of repetition, yet evading review," *Howard*, 480 F.3d at 1010, or that even if at present there is no ongoing full shackling policy, the case falls under the "voluntary cessation" exception to mootness, *Friends of the Earth*, 528 U.S. at 189. We are simply unable, on the record before us and without further exploration of the positions of the parties, to so determine.[2]

---

[2]Although the government, as the party asserting mootness, bears the burden of persuasion, we cannot rule in favor of the defendants merely because the government has as of yet failed to adduce evidence that might prove its case. As mootness is jurisdictional, "we must . . . consider it independent of the parties' arguments." *Cammermeyer v. Perry*, 97 F.3d 1235, 1237 n.3 (9th Cir. 1996).

**[11]** Accordingly, the case shall be REMANDED to the district court for the purpose of conducting an evidentiary hearing to determine the nature of the current shackling policy in the various district courts of the Eastern District of California. The district court shall determine, on the basis of the evidence presented, whether in practice, there is an "ongoing policy" of full shackling, or full shackling without individualized determinations, and whether the same shackling policy applies to "in-custody" and "out-of-custody" defendants. Similarly, the district court shall determine whether, even if the previous shackling policy is no longer being implemented, the case nonetheless falls under the voluntary cessation exception to mootness.

**[12]** On remand, the consolidated case — which challenges the constitutionality of a rule promulgated by the judges of the Eastern District, as well as their very authority to promulgate it — shall be assigned to an out-of-district judge. Although we do not suggest that there is any actual bias on the part of the judges, our ethics rules require recusal where a judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988) (noting 28 U.S.C. § 455(a)'s purpose of "promot[ing] public confidence in the integrity of the judicial process"). Here, the circumstances surrounding adoption of these orders suggest that an objective observer might reasonably question the impartiality of the judges.

Finally, the judges of the Eastern District shall be notified of the evidentiary hearing. They may, at their discretion, decide to retain separate counsel to represent their interests at that proceeding, as the Assistant United States Attorney stated at oral argument that she does not represent the court. Similarly, on remand, the Eastern District judges may wish to intervene in the proceedings, to file an amicus brief, or to decline to participate at all, as they see fit.

**REMANDED FOR FURTHER PROCEEDINGS.**