**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee*,

  v.

RENE SANCHEZ-GOMEZ,
   *Defendant-Appellant*.

No. 13-50561

D.C. No.
3:13-mj-03928-
BLM-LAB-1

Appeal from the United States District Court
for the Southern District of California
Barbara Lynn Major, Magistrate Judge, Presiding

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee*,

  v.

MOISES PATRICIO-GUZMAN,
   *Defendant-Appellant*.

No. 13-50562

D.C. No.
3:13-mj-03882-
JMA-LAB-1

Appeal from the United States District Court
for the Southern District of California
Jan M. Adler, Magistrate Judge, Presiding

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

                v.

JASMIN ISABEL MORALES, AKA
Jasmin Morales,
        *Defendant-Appellant*.

No. 13-50566

D.C. No.
3:13-cr-04126-
JLS-1

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

UNITED STATES OF AMERICA,
        *Plaintiff - Appellee*,

                v.

MARK WILLIAM RING,
        *Defendant-Appellant*.

No. 13-50571

D.C. No.
3:13-cr-03876-
MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
November 18, 2014—Pasadena, California

Filed August 25, 2015

Before: Mary M. Schroeder and Jacqueline H. Nguyen, Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge Schroeder

## SUMMARY[**]

### Criminal Law

The panel vacated the district court's orders in four cases in which defendants challenged a policy in the Southern District of California whereby United States Marshals place pretrial detainees in full shackle restraints for most appearances before a judge, including arraignments, unless a judge specifically requests the restraints be removed in a particular case.

The panel held that a full restraint policy ought to be justified by a commensurate need, and cannot rest primarily on the economic strain of the jailer to provide adequate safeguards. The panel held that on the record here, the Southern District has failed to provide adequate justification for its restrictive shackling policy. The panel remanded for further proceedings.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Reuben Camper Cahn, Sherleen J. Charlick, Ellis M. Johnston III (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendants-Appellants.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Kyle Hoffman (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

The judges of the Southern District of California have deferred to the recommendation of the United States Marshals to place pretrial detainees in full shackle restraints for most appearances before a judge, including arraignments, unless a judge specifically requests the restraints be removed in a particular case. The deferral policy was adopted after some security incidents, coupled with understaffing, created strains in the ability of the Marshals Service to provide adequate security for the newly opened San Diego courthouse. Several defendants have unsuccessfully challenged the policy in the district court and now appeal.

Our circuit's leading case requires adequate justification for a generalized policy authorizing the pretrial use of shackles. *United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007). On this record, the Southern District has failed to provide adequate justification for its restrictive shackling

policy. We therefore vacate and remand for further proceedings.

## BACKGROUND

On March 12, 2013, the U.S. Marshal for the Southern District of California sent a letter to the Chief Judge of the District requesting that the district consider adopting a policy of producing defendants in full restraints for most non-jury proceedings. Full restraints consist of leg shackles and handcuffs connected to a belly band by a chain approximately 15 inches long. They are also referred to as "five point restraints."

Subsequently, on July 8, 2013, the Marshals Service gave a presentation to all district judges on the need for the policy. The Chief Judge then responded with a letter to the Marshals on October 11, 2013, announcing that the district judges had decided to defer to the Marshals' recommendation. The letter stated that defendants would be produced in full restraints for all non-jury proceedings, with the exception of guilty pleas and sentencing hearings, and subject to the rule that any judge may ask the Marshals to remove the restraints in a particular case.

The new policy took effect on October 21, 2013, with all defendants appearing in full restraints for non-jury proceedings, subject to the exceptions stated in the October 11 letter. It appears that some individual judges have opted out of the policy.

The Chief Judge's letter made it clear that the policy emanated from the presentation by the Marshals Service highlighting security problems within the district. There is no

dispute that the Southern District has a higher volume of criminal defendants than most other districts, that violence among pretrial detainees appears to have increased, and that there have been two incidents of in-court attacks on a fellow prisoner. The Marshals' staffing has not materially increased since 2012, although the Marshals have had to service three courthouses since a new courthouse opened for business that year.

When the new shackling policy was put into place, the criminal defendants began to request to be unshackled, and several appealed denials by the magistrate judge. The Federal Defenders then filed a challenge to the policy on behalf of three defendants whom they represented, Rene Sanchez-Gomez, Moises Patricio-Guzman and Jasmin Isabel Morales, and, in their consolidated cases, the district judge denied the challenge. The judge in a fourth case, that of Mark William Ring, ruled similarly, and all four cases are consolidated in this appeal. We have previously ruled that we have appellate jurisdiction in similar circumstances. *See Howard*, 480 F.3d at 1011. Although these appellants are no longer detained, the case is not moot. *See id.* at 1009–10. Any constitutional harm caused by shackling a defendant at non-jury proceedings is likely to be repeated yet will not last long enough to be judicially reviewed; thus, the exception to the mootness doctrine for cases that are "capable of repetition, yet evading review" applies. *See id.*

## DISCUSSION

### I.  General Legal Principles

The Supreme Court has formulated rules for when shackling an individual defendant is permitted in the context

of jury proceedings, but has not considered a policy, such as the Southern District's, which applies only in proceedings before a judge. The Supreme Court's most recent decision regarding shackling, *Deck v. Missouri*, identified three fundamental legal principles adversely affected by the use of shackling. 544 U.S. 622, 630–31 (2005). These principles are: (1) the presumption of innocence until proven guilty, a presumption that is undermined by shackling before a jury; (2) the right to counsel, which shackles can hinder by interfering with a defendant's ability to communicate with his lawyer and by humiliating and distracting a defendant, potentially impairing his ability to participate in his own defense; and (3) the need for a dignified and decorous judicial process, which may be affronted by the routine use of shackles. *Id.*

*Deck* dealt with shackling in the presence of a jury, and the government stresses that fact in defending this shackling policy. The government relies upon the following passage:

> *The law has long forbidden routine use of visible shackles* during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need.
>
> This rule has deep roots in the common law . . . . Blackstone and other English authorities recognized that *the rule did not apply at "the time of arraignment," or like proceedings before the judge*. Blackstone, *supra*, at 317; *see also Trial of Christopher Layer*, 16 How. St. Tr. 94, 99 (K.B. 1722). It was meant to protect defendants appearing at trial before a

> jury. *See King v. Waite*, 1 Leach 28, 36, 168 Eng. Rep. 117, 120 (K.B. 1743) ("[B]eing put upon his trial, the Court immediately ordered [the defendant's] fetters to be knocked off").

*Id.* at 626 (emphases added).

This passage in *Deck*, however, does not support the government's position that there are no limits on the use of shackles before a judge. We agree that a policy that permits routine use of shackles is not "forbidden" in non-jury proceedings under the Fifth Amendment's Due Process Clause; it does not follow, however, that under our precedent shackles may always be used routinely before a judge without any justification or showing of necessity. We have ruled that such a generalized shackling policy must rest on an "adequate justification of its necessity." *Howard*, 480 F.3d at 1008. We therefore consider whether the Southern District's policy meets that standard.

## II. Our Circuit's Decision In *Howard*

Much of the dispute between the parties in this case appears to center on our decision in *Howard*, the only case involving pretrial shackling. In *Howard* we considered a policy authorizing use of leg shackles during appearances before a magistrate judge in the Roybal Courthouse in Los Angeles. We did not reach the question of whether due process requires an individualized determination in a jury proceeding, because we were dealing with non-jury proceedings. We did recognize that the adoption of a general shackling policy in a non-jury setting must be justified. After examining both the extent of the policy and the asserted need

for the policy, we held that the policy was adopted "with an adequate justification of its necessity." *Id.* at 1008.

The government contends that *Howard* authorizes the general policy at issue here, a policy of using full restraints during most appearances before a judge. *Howard* does not do that. This policy is more restrictive of defendants' movement, applies more broadly, and was adopted with less judicial consideration of its justification than the policy in *Howard*.

The policy in *Howard* authorized only leg shackles, while this policy authorizes full five point shackles. The policy in *Howard* applied only at first appearances, while the policy in the Southern District applies to a wide range of non-jury proceedings. The policy in *Howard* applied only before magistrate judges; this policy applies to proceedings before both magistrate and district judges. Because the shackling in this case is more burdensome and used more frequently than in *Howard*, it carries a greater risk of impeding the ability of defendants to participate in their defense and communicate with their counsel. The shackles at issue here are also a greater affront to the dignity and decorum of the proceedings, because the shackles themselves are more conspicuous and are used at many different stages of a criminal case. This shackling policy thus carries a greater risk of interfering with a defendant's constitutional rights.

Accordingly, we believe the Southern District must demonstrate a stronger justification for this policy's necessity than was demonstrated in *Howard*. Although both policies were adopted after consultation with the Marshals, the deference by the judges to the financial burdens and staffing issues of the Marshals in the Southern District is one of the

dominant factors in the record before us. This case, in fact, references less justification for the shackling policy than did the record in *Howard*.

The concerns in *Howard* were focused on the nature and location of the proceedings. The primary justification given for that policy was a concern for maintaining security in a particular courtroom, a problem peculiar to the Roybal Courthouse in Los Angeles. *Howard*, 480 F.3d at 1013. We discussed security concerns created by "the Central District's practice of conducting proceedings in a large courtroom on the third floor of the Roybal Courthouse, in the presence of multiple defendants, where the risks of conflict, violence, or escape are heightened." *Id.*

A bit of history is illuminating. The Roybal Courthouse involved in *Howard* was built several decades earlier, and was originally designed not as a stand-alone courthouse, but as an office building with a few courtrooms. This design is what gave rise to the security problems discussed in *Howard* and was the result of a feud between the General Services Administration and the District Court for the Central District. After the District Court rejected a proposal to move out of their existing courthouse and into an entirely new one, Congress chose instead to incorporate a few additional courtrooms into a planned office building, which became the Roybal Courthouse. *See* William Overend, *No New Courthouse, Roybal Tells Judges*, L.A. Times, Feb. 9, 1985; Overend, *Fight Over 20 New U.S. Courtrooms Flares Up*, L.A. Times, Mar. 31, 1986 ("[T]he Chief U.S. District Judge wants to add . . . courtrooms by building a 14-story tower adjoining the existing courthouse, was told by the General Services Administration that his plan has been rejected by Congress in favor of a proposal to put the new courtrooms in

a different building."). The Roybal Courthouse was thus particularly ill-suited to accommodate modern security concerns.

In this case, the government has not demonstrated that the courthouses in the Southern District pose similar problems for security. The record here indicates the Marshals in the Southern District pointed to problems arising from the existence of three courthouses, ostensibly brought about by the 2012 opening of a new, state-of-the-art courthouse which, unlike Roybal, presumably was designed to accommodate modern security concerns.

In its attempt to buttress the need for shackling in this case, the government focuses on several incidents of violence, an asserted change in inmate demographics, and other security factors that it claims lead to an increased risk of violence. Yet the government has not pointed to the causes or magnitude of the asserted increased risk. Nor did the government try to demonstrate to the district judges, or now on appeal, that other less restrictive measures, such as increased staffing, would not suffice.

We do not suggest that judges are necessarily required to document the need for a shackling policy in any particular manner, as for example, with statistics or the infeasibility of less restrictive alternatives. We hold only that in this case, judges should have provided greater justification for adopting such a policy.

In sum, we approved the policy in *Howard* largely because of problems inherent in the Roybal Courthouse's design. No similar design problems have been shown to exist in the Southern District. Moreover, the Southern District's

policy is substantially more extensive and restrictive than the one in *Howard*.

Our holding is consistent with that reached by the Second Circuit in *United States v. Zuber*, 118 F.3d 101 (2d. Cir. 1997). In that case, the court upheld the shackling of an individual defendant at a sentencing hearing before the same judge who had presided over the trial. *Id.* at 104. The Second Circuit held that the trial court was not required to conduct an individualized hearing every time a prisoner was brought into court. *Id.* At such a sentencing proceeding, the trial court properly deferred to the "professional judgment of the Marshals Service regarding the precautions that seem appropriate or necessary in the circumstances." *Id. Zuber* did not involve a blanket pretrial policy of shackling all defendants regardless of the circumstances, but rather approved limited deference to the Marshals' judgment that individual defendants be shackled in particular circumstances. This is a far cry from deferring to the Marshals' request that all defendants be shackled in all appearances before trial.

We therefore hold that a full restraint policy ought to be justified by a commensurate need. It cannot rest primarily on the economic strain of the jailer to provide adequate safeguards. We do not say that a blanket policy of shackling defendants in non-jury proceedings is never permissible; indeed, we approved of one such policy in *Howard*. We merely reiterate what we recognized in *Howard*, that such a policy must be adopted with "adequate justification of its necessity." *Howard*, 480 F.3d at 1008. The record here falls short of that showing.

## CONCLUSION

The consolidated orders of the district court are **VACATED** and the matters **REMANDED**.